(49 South. 648.)

No. 17,441.

In re SUPPLE MINORS FOR FAMILY MEETING.

(May 24, 1909. Rehearing Denied June 19, 1909.)

MINORS AND TUTORSHIP—FAMILY MEETING—APPOINTMENT OF TUTRIX.

Where the proceedings of a family meeting called for the purpose of recommending whether the surviving mother, who had remarried, should be appointed tutrix of her minor children, included two recommendations, the first advising her appointment as tutrix on giving bond and security, and the second advising her appointment as tutrix for the custody of the children, and that the property of the minors should continue to be administered by a certain trust company already appointed by the court for that purpose, *held*, that the judge was without power to strike out the last recommendation as surplusage, and to homologate the first recommendation as the advice of the family meeting, and should have refused to homologate the proceedings, and should have ordered another family meeting to be convoked.

[Ed. Note.—For other cases, see Guardian and Ward, Dec. Dig. § 9.*]

(Syllabus by the Court.)

Appeal from Thirteenth Judicial District Court, Parish of Rapides; Wilbur Fisk Blackman, Judge.

In the matter of the Supple minors for family meeting. From an order appointing Mrs. Murray tutrix, the Iberville Bank & Trust Company, tutor, appeals. Reversed and remanded.

Edward Blount Talbot and White, Thorton & Holloman, for appellant. Robert P. Hunter & Sons, for appellee

LAND, J. Thomas Supple died in the parish of Iberville in the year 1904, leaving a widow and four minor children, and an estate consisting of his separate property and his interest in the community property.

The surviving widow, Mrs. Annie H. Supple, was appointed and confirmed as natural tutrix of the minors, and William Supple, an uncle of the minors, was appointed and confirmed as undertutor.

In November, 1905, on the petition of the tutrix and contradictorily with the undertutor, the Iberville Bank & Trust Company was appointed and confirmed as tutor "for the care, custody, and administration of the separate property of said minors," amounting to the sum of $26,267. This appointment purports to have been made under Act No. 45, p. 59, of 1902, authorizing the appointment of banks organized for the purpose of conducting a savings, safe deposit, and trust banking business as tutors only for the care, custody, and administration of the property of minors, leaving the care and custody of the persons of such minors to be confided to such person as by law would otherwise be entitled to the tutorship.

In March, 1908, the Widow Supple married Joseph B. Murray without previously provoking a family meeting to advise as to her retention of the tutorship. Her neglect to call such a meeting ipso facto deprived her of the tutorship. Civ. Code, art. 254.

In October, 1905, Mrs. Murray made application to be appointed dative tutrix without bond, but the family meeting refused to advise such appointment.

In November, 1908, Mrs. Murray made application to be appointed dative tutrix with bond, but a large majority of the family meeting refused to recommend such appointment.

In December, 1908, Mrs. Murray made another application to be appointed dative tutrix with bond. A family meeting was convoked, and the members and undertutor signed a procès verbal drawn by the notary, containing two recommendations: First, that Mrs. Murray be appointed tutrix upon giving bond for the full amount of the estate of the minors; and, second, that Mrs. Murray be appointed dative tutrix to have the custody of her minor children, and that the tutorship of the Iberville Bank & Trust Company for the administration of the property of said minors be not disturbed.

Mrs. Murray thereupon ruled the undertutor to show cause why the last recommendation should not be stricken out and disregarded and the first recommendation homologated as representing the advice of the family meeting, and why she should not be appointed and confirmed as dative tutrix on giving bond and security and taking the oath required by law. Mrs. Murray in her petition for the rule alleged that the appointment of the trust company as tutor was absolutely null, and reserved the right to attack the same after her qualification as tutrix.

For answer, the undertutor set forth the two previous refusals of the family meeting to recommend the appointment of Mrs. Murray as tutrix, and averred that on the third meeting he repeated his opposition to her unqualified appointment, and that the family meeting, after due deliberation, recommended in the procès verbal that the tutorship of the Iberville Bank & Trust Company of the property of the minors should not be disturbed. The undertutor, further answering, opposed the striking out or rejection of any portion of the recommendation, and prayed that the proceedings be homologated or rejected as a whole.

On the trial of the rule, it was admitted that the procès verbal of the family meeting, except the last recommendation, was typewritten prior to the convening of the meeting, and that said recommendation is in the handwriting of the notary. The members of the meeting were offered as witnesses to prove that the last recommendation expressed their wishes and intention on the matter, but their testimony was ruled out on objections.

The court rendered judgment homologating the proceedings and procès verbal, with the exception of the last recommendation, which was not approved, and appointing Mrs. Murray as tutrix, unconditionally, upon her qualifying according to law. The undertutor has appealed.

The procès verbal on its face contains two contradictory recommendations in respect to the appointment of the tutrix. The first, written in advance of the meeting, advised the appointment of Mrs. Murray as sole tutrix on her giving bond and security. The second, written at the meeting, advised her appointment as tutrix, to have the custody of her minor children, and that the tutorship of the trust company for the administration of the property of the minors be not disturbed.

In the light of the previous action of the members of the family meeting and of the circumstances surrounding the confection of the procès verbal, it might well be inferred that the last recommendation represented their real advice in the premises; but, taking the procès verbal alone as it appears in the transcript, there is a manifest repugnancy between the two recommendations as to the appointment of Mrs. Murray as tutrix. The court might have permitted the members

of the family meeting to testify as to their intentions, as was done in Webb v. Webb, 5 La. Ann. 596; but there is neither reason nor authority for treating the last recommendation as mere surplusage, or, in other words, as matter foreign and impertinent to the question before the family meeting.

In Stone v. Harrison, 12 La. Ann. 726, the family meeting recommended that the widow, who was about contracting a second marriage, should be retained in the tutorship, and further advised that in the administration of her trust all drafts for money belonging to the minors should be drawn to the order of, and indorsed by, the undertutor. The court properly held that such restrictions were not made conditions to the appointment of the tutrix, but were added after the meeting had recommended the appointment, and constituted mere surplusage. It is obvious that the question of the manner in which the tutrix should draw on the money of the minors was not before the family meeting.

In Webb v. Webb, supra, where the family meeting annexed an unlawful condition to the appointment of a tutrix, the court did not disregard the requirement as surplusage, but remanded the cause for further proceedings.

Wherever the homologation of the deliberations of a family meeting is demanded, the judge may refuse or grant the homologation; but he cannot modify the decision of the family meeting. Baudry-Lacantinerie, Traité de Droit Civil, vol. 4, p. 470. Hence, if recommendations be inconsistent or contradictory, or contain unlawful conditions, the court should refuse to homologate, and relegate the matter to another family meeting.

It is therefore ordered that the judgment appealed from be annulled, avoided, and reversed, and that this cause be remanded for further proceedings according to law; appellee to pay costs below and costs of appeal.